RENDERED: JULY 2, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0494-MR

NATHANIEL L. BREAZEALE                                                      APPELLANT

v.        APPEAL FROM TRIGG CIRCUIT COURT
          HONORABLE JAMES R. REDD, III, JUDGE
          ACTION NO. 17-CR-00039

COMMONWEALTH OF KENTUCKY                                                APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; EASTON AND L. JONES, JUDGES.

JONES, L., JUDGE: Nathaniel L. Breazeale brings this appeal from the March 28, 2025 Findings of Fact, Conclusions of Law, and Final Order Denying Defendant's Motion Pursuant to RCr[1] 11.42 following an evidentiary hearing. We affirm.

---

[1] Kentucky Rule of Criminal Procedure.

In December of 2016, Breazeale moved in with his girlfriend, Samantha, and her one-year-old son, Charlie.[2] On March 14, 2017, Breazeale did not go to work due to illness. Ordinarily, Samantha would take Charlie to her sister's house when she was scheduled to work. However, on this particular day Charlie was also ill, so Samantha left him home with Breazeale. When Samantha returned home from work that afternoon, Breazeale and Charlie were asleep on the couch and Samatha did not disturb them. Later that evening when Samantha headed to bed, she picked up Charlie from the couch and noticed he had a bruise above his eye. Samantha questioned Breazeale about the bruise and he told her that Charlie had slipped on the tile floor and hit his head. The next morning Samatha was feeling ill and did not go to work. When Charlie woke up, Samantha changed his diaper and discovered Charlie had bruises over his entire body. Samantha questioned Breazeale about the bruising which led to an argument. Samantha wanted to take Charlie to the hospital, but Breazeale would not allow it. Breazeale eventually left the house and took the keys to their only vehicle with him. Samantha called her mother and the two of them took Charlie to the Trigg County Hospital Emergency Room (ER). The ER doctors discovered Charlie had

---

[2] Due to the disturbing nature of the injuries sustained in this case, the Kentucky Supreme Court in its Opinion affirming Breazeale's conviction upon Assault in the First Degree and Criminal Abuse in the First Degree, referred to this victim and his mother by pseudonyms. *See Breazeale v. Commonwealth*, 600 S.W.3d 682 (Ky. 2020). For ease of reference, we have adopted the same pseudonyms.

multiple serious injuries. These injuries were described by the Kentucky Supreme

Court in its Opinion affirming Breazeale's conviction as follows:

> Dr. Jefferey Frederick was the ER doctor that treated Charlie. Dr. Frederick quickly realized Charlie had life-threatening injuries, and after a CT scan revealed bleeding in Charlie's abdomen, Dr. Frederick had Charlie flown to Kosair Children's Hospital in Louisville (Kosair Hospital).

> Dr. Melissa Currie, a Child Abuse Specialist and Medical Director in Chief of the Division of Child Maltreatment at the University of Louisville, testified regarding Charlie's injuries. Charlie had bruises on his face, on the front of his body from his neck to his genitals, and up and down his back. He did not have a normal level of awareness and had to be given fluids and blood to keep his blood levels up. A CT scan conducted at Kosair Hospital showed that Charlie's pancreas was broken into two pieces, and that he also had a serious injury to his duodenum.

> Charlie was immediately taken to surgery. During surgery they found that Charlie had about 10 ounces of blood in his abdomen, which Dr. Currie testified was a lot for a baby his size. The surgeon had to remove the portion of his pancreas that was separated. Charlie's duodenum also had to be removed because its tissue was dying due to lack of blood flow. There were several tears in Charlie's mesentery that also had to be repaired.

> After surgery, Charlie's organs were so swollen that not all of his organs would go back in his abdomen. They therefore had to use a "silo" device for three days to house his organs outside of his body until they could safely be put back in his abdomen. After they closed his stomach, they conducted an x-ray which revealed Charlie had a broken tibia. An MRI showed he had a vertebral compression fracture, meaning that one of the bodies of

-3-

his vertebra was crushed. Charlie was hospitalized for twelve days, eight of which were in the intensive care unit. He had a breathing tube and was placed on a ventilator. Dr. Currie testified that Charlie's injuries were consistent with an intrusion injury: a stomp, kick, or punch to his stomach. Based on the number of bruises, which were described as "innumerable," he was struck multiple times. Although Charlie has thankfully, if not miraculously, recovered from his injuries, his survival at that time was "not a given" according to Dr. Currie.

*Breazeale v. Commonwealth*, 600 S.W.3d 682, 686-87 (Ky. 2020) (footnotes omitted).

Breazeale was ultimately indicted by a Trigg County Grand Jury upon one count each of Assault in the First Degree and Criminal Abuse in the First Degree. Breazeale moved for a psychiatric exam to determine his competency to stand trial and was evaluated at the Kentucky Correctional Psychiatric Center (KCPC). Following the evaluation and report, the trial court found Breazeale competent to stand trial. A jury trial subsequently ensued.

At the conclusion of the jury trial, Breazeale was found guilty of the indicted offenses and was sentenced to thirty-years' imprisonment. Breazeale's conviction was affirmed in his direct appeal to the Kentucky Supreme Court. *Breazeale*, 600 S.W.3d 682. Thereafter, Breazeale filed a *pro se* motion pursuant to RCr 11.42 to vacate his sentence. Counsel was appointed for Breazeale and a supplement to the RCr 11.42 motion was filed. In the RCr 11.42 motion, Breazeale asserted trial counsel was ineffective for: (1) failing to call Andrea

-4-

Tyson, a registered nurse for the American Heart Association, to testify regarding the proper performance of the Heimlich Maneuver, and (2) failing to retain an independent mental health expert to assist in Breazeale's mental health defense.

The trial court granted Breazeale's motion for an evidentiary hearing as to Tyson but denied it as to the independent mental health assessment. The trial court reasoned that a hearing was not necessary on the issue of an independent mental health assessment of Breazeale as trial counsel "was justified in relying on the KCPC report without seeking other investigation." May 31, 2024 Order; Trial Record (R.) at 498-500. Following the evidentiary hearing, the trial court entered the Findings of Fact, Conclusions of Law, and Final Order Denying Defendant's Motion Pursuant to RCr 11.42 on March 28, 2025. This appeal follows.

Our standard of review upon the denial of a claim of ineffective assistance of trial counsel is as follows:

> We evaluate ineffective assistance of counsel claims under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), adopted by this Court in *Gall v. Commonwealth,* 702 S.W.2d 37 (Ky.1985), [*abrogated on other grounds by Meece v. Grise*, 2026 WL 491039 ___ S.W.3d ____ (Ky. 2026)]. Under the *Strickland* framework, an appellant must first show that counsel's performance was deficient. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052. A "deficient performance" contains errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, the appellant must show that counsel's deficient performance prejudiced his defense at trial. *Id.* "This requires

-5-

> showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* An *appellant must satisfy both elements of the* Strickland *test in order to merit relief. Id.*

*Commonwealth v. McGorman*, 489 S.W.3d 731, 736 (Ky. 2016) (emphasis added).

Breazeale contends trial counsel was ineffective for failing to call Tyson as a witness. At trial, the defense's theory was that Breazeale did not act intentionally or wantonly when he struck Charlie. Rather, it was asserted that Charlie was injured when Breazeale hit him on the back to prevent him from choking on his own vomit. Breazeale now asserts that Tyson's testimony on the proper performance of the Heimlich Maneuver would have supported the defense's theory that Charlie was injured by "Breazeale's 'over-performance' of life-saving measures on him, and [Breazeale] was denied a fair trial when the jury did not hear this evidence." Breazeale's Brief at 12.

At the evidentiary hearing on Breazeale's RCr 11.42 motion, Breazeale called three witnesses: (1) Taylor Cooper, Breazeale's pre-trial counsel; (2) Andrea Tyson, a registered nurse who taught the Heimlich Maneuver for the American Heart Association; and (3) Jason Pfeil, Breazeale's trial counsel.

Cooper testified that he attempted to locate an expert to testify regarding the proper performance of the Heimlich Maneuver. Cooper said he eventually discussed the case with Tyson, a registered nurse who taught the proper performance of the Heimlich Maneuver for the American Heart Association.

-6-

March 28, 2025 Findings of Fact, Conclusions of Law, and Final Order Denying Defendant's Motion Pursuant to RCr 11.42 at 1. Cooper further testified that Tyson explained the proper performance of the Heimlich Maneuver on an eighteen-month-old child was to make a ball with your fist and then make an upward thrusting motion into the stomach. Tyson also explained it would be improper to hit a choking eighteen-month-old child on the back. Following his conversation with Tyson, Cooper decided not to call Tyson as a witness. Cooper believed Tyson's testimony would be detrimental to Breazeale's case as it would reveal that Breazeale had performed the maneuver improperly, thus causing Charlie's injuries. Furthermore, Cooper noted Tyson did not have the credentials to testify regarding whether Breazeale caused the injuries to Charlie.

The second witness called to testify at the evidentiary hearing was Tyson. Tyson testified she previously worked as an instructor for the American Heart Association where she taught first aid including how to perform the Heimlich Maneuver. Tyson testified the best way to perform the Heimlich Maneuver on an eighteen-month-old child was an abdominal thrust to the front of the body. Tyson further testified that hitting the child on the back, as Breazeale claimed he had done to Charlie, was not the proper method for performing the Heimlich Maneuver. Tyson admitted she was aware that minimal bruising could occur from performing the Heimlich Maneuver, but it would not cause the severe

injuries Charlie had sustained. Tyson opined the injuries sustained in this case were more consistent with a traumatic automobile accident than an attempt at the Heimlich Maneuver.

The third and final witness to testify at the hearing was trial counsel for Breazeale, Jason Pfeil. Pfeil testified he was a trial attorney with over twenty-five years' experience and had defended several serious felony cases during his career. Pfeil acknowledged he was aware that during the investigation Breazeale reported to police he had attempted to perform the Heimlich Maneuver on Charlie. Pfeil further testified he did not call Tyson as a witness because her testimony would not have provided an explanation for Charlie's injuries consistent with Breazeale's explanation of the events. Pfeil likewise stated he did not challenge the theory that Breazeale was the cause of the injuries because there was nothing to suggest otherwise.

In the case *sub judice*, Breazeale is unable to satisfy the first prong of the *Strickland* test. In other words, Breazeale is unable to demonstrate that trial counsel's performance was deficient for failing to call Tyson as a witness at trial. The defense's trial strategy was that Breazeale did not act intentionally or wantonly when he injured Charlie by hitting him on the back as he was choking on his vomit. This theory was also consistent with Breazeale's statement to police that he had hit Charlie to keep him from choking. Both Cooper and Pfeil testified

they were aware of Tyson and of her opinion on the issue but decided not to call her as a witness because her testimony would not have been beneficial to the defense's strategy. In fact, Tyson testified at the hearing that she had never seen injuries like those Charlie suffered (transected pancreas, severe intestinal injuries, or a broken tibia) from the improper administration of the Heimlich Maneuver. As Tyson's testimony at the hearing demonstrated, having her as a witness at trial would not have benefitted Breazeale. In fact, her testimony would have been detrimental to the defense's trial strategy that Charlie's injuries could have been caused by Breazeale's attempts to prevent Charlie from choking. As such, we agree with the trial court's decision that counsel's decision not to call Tyson as a witness was sound trial strategy and was not deficient performance. As trial counsel's performance was not deficient, Breazeale cannot satisfy the first prong of the *Strickland* test necessary to obtain the relief sought. *See McGorman*, 489 S.W.3d at 736. As both prongs of *Strickland* must be satisfied, Breazeale has failed to demonstrate he is entitled to relief on his claim of ineffective assistance of counsel regarding the decision not to call Tyson as a witness.

Breazeale next contends that trial counsel was ineffective for failing to retain an independent mental health expert to aid in his defense. Breazeale acknowledges he was evaluated by KCPC's psychiatric staff regarding both his mental competency to stand trial and his criminal responsibility. However,

-9-

Breazeale believes trial counsel erred by not attempting "to obtain an independent mental health expert to assist in developing a defense based upon [his] mental state[.]" Breazeale's Brief at 19. Breazeale essentially claims he suffers from post-traumatic stress disorder, anxiety, and bipolar disorder and that these mental health issues could have impacted the jury's decision as to his guilt and punishment.

Before trial, counsel for Breazeale moved for a psychiatric evaluation to determine if he was competent to stand trial. The trial court granted the request and Breazeale was evaluated at KCPC. Breazeale did not indicate during the evaluation that he suffered any mental defect at the time he assaulted Charlie. Rather, Breazeale provided the same account of the assault he had previously supplied to police about hitting Charlie to prevent him from choking on his vomit. Following the psychiatric evaluation at KCPC, the trial court made extensive findings of fact and conclusions of law including the following psychiatric diagnoses: Antisocial Personality Disorder, Conduct Disorder in Childhood, Methamphetamine Use Disorder, Synthetic Drug Use Disorder, Benzodiazepine/Anxiolytic Use Disorder, Opioid Use Disorder, and Alcohol Use Disorder. The trial court noted that Breazeale did not suffer from a mental illness as defined in the criminal responsibility statutes and did not lack the capacity to appreciate the criminality of his conduct or the ability to conform his conduct to

the requirements of the law. Thus, the trial court concluded Breazeale was criminally responsible for his conduct at the time of the alleged offenses. The court pointed out that Breazeale was treated at KCPC for more than a week, had been through extensive testing, and had the opportunity to discuss any mental health concerns with the evaluator but failed to do so. The trial court concluded that trial counsel acted reasonably for relying on the extensive KCPC evaluation and for not pursuing an independent mental health expert. And, we believe the trial court correctly concluded that counsel's performance did not contain any serious error that deprived Breazeale of a fair trial and thus was not deficient. As Breazeale has failed to allege any facts that demonstrate trial counsel's performance was deficient, the first prong of *Strickland* test cannot be satisfied. As both prongs of the *Strickland* standard must be satisfied, we agree with the trial court that Breazeale is unable to satisfy the requirements of *Strickland* and therefore is not entitled to relief.

We view any remaining contentions of error as moot or without merit.

For the foregoing reasons, the March 28, 2025 Findings of Fact, Conclusions of Law, and Final Order Denying Defendant's Motion Pursuant to RCr 11.42 is affirmed.

-11-

ALL CONCUR.

BRIEFS FOR APPELLANT:

Aaron P. Riggs
Assistant Public Advocate
Department of Public Advocacy
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky